UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                      PLAINTIFF

v.                                                                    CRIMINAL ACTION NO. 3:06CR-49-S

PEDRO PACHECO-LOPEZ                                                                         DEFENDANT

### MEMORANDUM OPINION AND ORDER

      This matter is before the court on motion of the defendant, Pedro Pacheco-Lopez ("Lopez"), to suppress evidence obtained allegedly in violation of his *Miranda* rights. An evidentiary hearing was conducted on July 10 and 20, 2006 during which the court heard evidence from various witnesses. Post-hearing briefs were filed on the issue, and the matter now stands submitted to the court for decision. For the reasons set forth herein, the court concludes that the motion to suppress must be denied.

      On March 13, 2006, undercover officers met Gerardo Castro-Acosta and others at an address on Clay Avenue in Louisville allegedly completing a "controlled buy" of a large quantity of cocaine. Acosta and his companions were arrested. They had arrived at Clay Avenue in a white Subaru and a red Dodge pick-up truck. The vehicles were registered to Acosta at 6006 Cooper Chapel Road. A search warrant was executed at the Cooper Chapel Road address where Lopez and another individual identified as Bernal-Bajo were found. The officers had no prior information concerning Lopez or Bernal-Bajo at the time they were discovered at the residence.

      There are a number of versions of what occurred at the time of the arrest of Lopez. The most credible version is that of Officer Mark Slaughter who actually arrested and questioned Lopez.[1] He

---

[1] The court heard testimony from Agent Brian Bester who was not at the Cooper Chapel Road residence, and from Trooper Albert Lagrange, the translator, whose recollection of the sequence of events appeared to be somewhat imprecise.

testified that upon entering the residence and discovering Lopez and Bernal-Bajo there, they were arrested, handcuffed, and placed in chairs at the kitchen table. Lopez was then asked a variety of questions concerned with securing the residence and identifying who these individuals were. Officer Slaughter initially discovered that the detainees did not speak English. He obtained the assistance of Trooper Lagrange to translate for them. He asked Lopez his name and where he lived. Lopez responded that he lived in Mexico, and that he did not live at the Cooper Chapel Road residence. Slaughter asked Lopez when he arrived and how he got there. Lopez answered that he arrived on the previous Sunday and that he drove a white Ford pick-up truck. Lopez then apparently volunteered the keys to the vehicle to Officer Slaughter. Lopez was then advised of his *Miranda* rights in Spanish by Trooper Lagrange. Officer Slaughter then asked if Lopez or Bernal-Bajo had brought any cocaine to the residence. Lopez acknowledged that he had brought some cocaine. At that point, Officer Slaughter and Trooper Lagrange took Lopez to a bedroom in the rear of the residence to attempt to further question him. Lopez then stated that he did not wish to say anything further to them. The officers then ceased questioning him and brought him back to the kitchen table. They then went outside and conducted a search of the garage.

The crux of Lopez' argument that his questioning was in violation of his *Miranda* rights was that he was given the warning in the middle of an interrogation and that therefore it was ineffective to adequately warn him that he had the right to end the inquiry and remain silent. He cites *Missouri v. Seibert*, 542 U.S. 600 (2004), in principal part, for his contention.

The key factor herein is whether the initial questions constituted an interrogation, such that the court should find that the *Miranda* warnings were "inserted in the midst of coordinated and continuing interrogation." *Seibert*, 542 U.S. at 613-614. *Seibert* did not outlaw the initial general questioning of a detainee prior to giving him the *Miranda* warning. Rather it renders the *Miranda* warning suspect when law enforcement essentially elicit first and warn later. They may not slip

*Miranda* warnings in during an interrogation such that a defendant is not made fully and completely aware of the right to remain silent or, if he has already spoken, to become silent.

These inquiries are necessarily fact specific. The court concludes that the initial questions asked of Lopez in this instance did not constitute an interrogation. Thus the additional questions asked and answered after the *Miranda* warning was given are not subject to suppression under *Seibert*. Officer Slaughter and other officers arrived at the home of Acosta who had just been arrested for trafficking in narcotics. Upon entering the premises, Officer Slaughter was faced with two unknown individuals in this residence. During these initial moments, he had no information concerning their identity nor did he know details concerning the method of transportation of the drugs. Transcript of 7/10/06 Suppression Hearing, pp. 13-16. Officer Slaughter asked Lopez who he was and whether he lived at the Cooper Chapel Road address. When he responded that he lived in Mexico, he asked Lopez when and how he arrived there. He was then read the *Miranda* warning.

The court concludes that it is only through 20/20 hindsight that the significance of the relatively innocuous initial questions is apparent. The questions posed to Lopez were general questions directed at ascertaining Lopez' identity and how he came to be in the residence from Mexico. The court find that this is a far cry from the "systematic" and "exhaustive" questioning in *Seibert*. After a few general questions, Lopez was given the *Miranda* warning in Spanish. 7/10/06 Trans., pp. 12-13. There has been no showing of any deficiency in the procedure or in the recitation of the warning in Spanish by an officer fluent in the language. The incriminating issue of cocaine was raised post-*Miranda*. While close in time to the general questions establishing his identity, the questions regarding cocaine were not a repetition of previous questions nor a continuation of prior questioning. Finally, when Lopez was taken to a separate room for further questioning, he invoked his right to remain silent, and questioning ceased. *Id.*

- 4 -

For the reasons set forth hereinabove and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Pedro Pacheco-Lopez, to suppress evidence (DN 45) is **DENIED**.

**IT IS SO ORDERED.**

- 4 -